1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   JAMES DEAN SOPHER,                    Case No.:  15cv1757-BEN (BLM)

12                        Petitioner,      **REPORT AND RECOMMENDATION FOR
                                           ORDER DENYING PETITION FOR WRIT
13   v.                                    OF HABEAS CORPUS AND ORDER
                                           DENYING REQUEST FOR EVIDENTIARY
14   JOE A. LIZARRAGA, Warden,             HEARING**

15                        Respondent.      **[ECF No. 1]**

16

17         This Report and Recommendation is submitted to United States District Judge Roger T.

18   Benitez pursuant to 28 U.S.C § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United

19   States District Court for the Southern District of California.   On August 6, 2015, Petitioner,

20   James Dean Sopher, a state prisoner proceeding *pro se* and *in forma pauperis*, commenced

21   these habeas corpus proceedings pursuant to 28 U.S.C. § 2254.   ECF No. 1 ("Pet.").   Petitioner

22   challenges the validity of his state court conviction for committing a lewd and lascivious act

23   upon a child under the age of fourteen by kissing Adrianna S., and the finding that he had

1

previously sustained a prior prison term conviction, a prior serious felony conviction, and a prior strike conviction for committing a lewd and lascivious act upon his minor daughter.  See Lodgment 3 at 7, 279, 282, 284.  Respondent answered on December 10, 2015.  ECF No. 8-1 ("Ans.").  Petitioner's Traverse was filed on February 10, 2016.  ECF No. 10 ("Trav.").

This Court has considered the Petition, Answer, Traverse and all supporting documents filed by the parties.   For the reasons set forth below, this Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

## **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken from the California Court of Appeal's opinion in People v. James Dean Sopher, Appeal No. D059363.  See Lodgment 7.  This Court presumes the state court's factual determinations to be correct, absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Parke v. Raley, 506 U.S. 20, 35 (1992) (holding findings of historical fact, including inferences properly drawn from such facts are entitled to statutory presumption of correctness).

Around August 2007, Desiree E., mother of Adrianna S., started dating Sopher.  He told her he had previously been incarcerated for drug manufacturing without mentioning his past convictions for sexual misconduct with his daughter. Around October 27, 2007, when Adrianna was eight years old, she told Desiree that Sopher had kissed her.  Adrianna later told Desiree that Sopher had rubbed his tongue in her mouth.  Desiree asked Adrianna if Sopher had molested her in any other way, and Adrianna said no.

At trial, Adrianna testified that during the incident, while she and Sopher lay in a bed, he put his tongue in her mouth and kissed her.  He also put his hands down her pants and touched her buttocks and vagina.  He told her not to tell her mother about the incident.

Christina Schultz, a forensic interviewer of child abuse victims and medical social worker, interviewed Adrianna in December 2007, a videotape of which was played for the jury.  Adrianna told Schultz: "I was sitting down watching TV and then [Sopher] took my body and then rolled me towards him and he trapped me

2

1

with his legs and then he hold his arms um[sic] and my mouth was shut he was kissing me and rubbing his tongue I tried to scream for my mom but my, but he had my mouth and I couldn't like he wouldn't let me go or anything."  Adrianna added that during the incident Sopher had put his hands under her underwear and touched her "private" in front, and her "behind."

2

3

4

Over defense objection, the court granted the prosecution's motion in limine to permit Sopher's daughters, T.H. and T.S., and their mother, Jodi M., to testify under Evidence Code sections 1101, subdivision (b) and 1108 about incidents of lewd and lascivious conduct on his then minor daughters, T.H. and T.S., leading to his guilty plea in 2000.

5

6

7

T.S. testified that when she was ten years old, while at Sopher's residence for the weekend, she awoke because he was licking and kissing her vagina.  She was scared, and recounted the incident to T.H.  Minutes afterwards, Sopher apologized to her and asked her not to tell anyone about the incident.

8

9

T.H. testified that when she was 13 years old, Sopher touched her breast.  T.H. added that during that same weekend, T.S. woke her up, and "[T.S.] was shaking and crying and said that [Sopher] just came in the room and was touching her."  T.H. added, "[T.S.] told me that she was laying there, and she woke up to [Sopher] licking her."

10

11

12

Jodi M. testified she picked up her daughters following their weekend at Sopher's residence.  T.S. was upset, teary-eyed and shaking, and said Sopher had touched her.

13

14

*Defense Case*

15

At trial, the prosecutor asked Sopher during cross-examination, "Did you kiss Adrianna?["]  He replied, "No, she kissed me.  She blew into my mouth."  Sopher stated Adrianna did that "in a playful manner."  The prosecutor asked him regarding his previous statement to a detective that during the incident Adrianna came up to him and stuck her tongue in his mouth.  After his memory was refreshed with a copy of the statement, he said, "That's correct, yeah."

16

17

18

Sopher testified that in 2000, to avoid a life sentence, he pleaded guilty to molesting T.H. under section 288, subdivision (a).  He admitted his role in the incident: "[T]he thing that they accused me of was brushing against my daughter's breast, and—which I did.  I did do that, and I admitted that, but it was not done in a sexual context."  Sopher was imprisoned for over five years for that crime, and released on parole.  But he did not tell Adrianna's mother or her grandfather that he had molested any of his daughters.

19

20

21

22

23

Lodgment 7 at 2-5.

15cv1757-BEN (BLM)

1    On October 15, 2008, the San Diego County District Attorney filed a three-count

2 information charging Petitioner with committing the following lewd or lascivious acts upon a

3 child under the age of fourteen against Adrianna in violation of California ("Cal.") Penal Code

4 § 288(a): kissing (count 1), vaginal touching (count 2), and buttocks touching (count 3).

5 Lodgment 3 at 6-9.   The information also alleged two alternative sentence enhancement

6 provisions: (1) Petitioner was previously convicted of violating Cal. Penal Code § 288(a) and

7 was subject to an alternative punishment of 25 years to life on counts 1–3 pursuant to Cal.

8 Penal Code § 667.71, and (2) Petitioner's previous conviction for violating Cal. Penal Code

9 § 288(a) rendered him subject to an alternative sentence under Cal. Penal Code § 667.61 of

10 25 years to life on counts 1–3.  Id. at 7-8.  The information further alleged that Petitioner's

11 prior conviction for violating Cal. Penal Code § 288(a) was a qualifying serious felony prior

12 conviction (Cal. Penal Code § 667(a)(1)), a violent felony prison prior (Cal. Penal Code

13 § 667.5(c)), and a three strikes prior conviction (Cal. Penal Code §§ 667(b)-(i) & 1170.12).  Id.

14 at 8-9.

15    Following a trial, on March 3, 2010, a jury found Petitioner guilty on count 1, but was

16 unable to reach a verdict on counts 2 and 3.  Id. at 279, 282.  The court declared a mistrial as

17 to counts 2 and 3.  Id. at 279.  The court subsequently found in a bifurcated proceeding that

18 Petitioner qualified as a habitual sex offender within the meaning of Cal. Penal Code

19 § 667.71(a), that he had been previously convicted of Cal. Penal Code § 288(a) offense within

20 the meaning of Cal. Penal Code §§ 667.61 (a), (c), (d), and had a prior violent prison term

21 conviction (Cal. Penal Code § 667.5(a)), a prior serious felony conviction (Cal. Penal Code

22 §§ 667(a)(2), 1192.7(c)), and a prior strike conviction (Cal. Penal Code §§ 667(b)-(i), 668).

23

Id. at 284.  On February 18, 2011, the trial court sentenced Petitioner to fifty-five years to life in state prison.  Id. at 224-26, 293.

**Direct Appeal**

On January 30, 2012, Petitioner appealed his conviction to the California Court of Appeal arguing that (1) the trial court failed to investigate possible jury bias; (2) the trial court admitted irrelevant and prejudicial evidence regarding his parole status; (3) the trial court failed to instruct the jury with CALCRIM No. 1193 on the limited use of expert testimony on child sexual abuse accommodation syndrome; (4) the trial court erred in admitting prejudicial expert testimony; (5) the trial court erred in admitting prejudicial hearsay testimony regarding his prior sexual misconduct under Cal. Evidence Code § 1108; (6) the trial court erred in allowing the introduction of expert opinion testimony that he was a sexual predator; and (7) cumulative error.  Lodgment 4 at 18-62.  On February 21, 2013, the state appellate court rejected the claims.  Lodgment 7.  On March 8, 2013, Petitioner filed a petition for rehearing in the California Court of Appeal, which was denied on March 14, 2013.  Lodgments 8 & 9.

On April 2, 2013, Petitioner filed a petition for review in the California Supreme Court alleging the same claims.  Lodgment 10.  The California Supreme Court summarily denied the petition without comment or citation to authority on June 12, 2013.  Lodgment 11.

**Collateral Challenge**

On November 26, 2013, Petitioner filed a habeas corpus petition in the San Diego Superior Court claiming: (1) ineffective assistance of trial counsel for: (a) permitting hearsay testimony and evidence of prior alleged sex acts, (b) failing to present an expert or rebut the prosecution's expert, (c) failing to develop any alternative defense theory other than Petitioner's testimony, (d) failing to poll the jury, which would have shown juror misconduct or

jury manipulation, (e) failing to file a writ of mandate or prohibition relating to trial court's pretrial rulings on the in limine motions, and (f) failing to object to jury instructions that lowered prosecution's burden of proof; (2) judicial error and bias; (3) error in admitting prior sex acts evidence; and (4) unconstitutionally vague statutes.  Lodgment 12.  On January 29, 2014, the court denied the petition.  <u>See</u> Lodgment 13.

On January 7, 2015, Petitioner filed a petition in the California Court of Appeal alleging the following claims: (1) ineffective assistance of trial counsel for (a) not retaining an expert witness to rebut the testimony of the prosecution's expert on child abuse, (b) not investigating Adrianna's father and stepmother to establish a motive for Adrianna to accuse Petitioner, (c) not obtaining evidence that "three individual jurors were badgered and intimidated into reaching a guilty verdict," and (d) failing to challenge the trial court's decision to admit the videotaped interview of Adrianna as part of the prosecution's case on the ground the admission violated Petitioner's right to confront adverse witnesses under <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) ("<u>Crawford</u>"); (2) ineffective assistance of appellate counsel for (a) not challenging the admission of the videotaped interview of Adrianna as erroneous under <u>Crawford</u>, (b) not challenging Cal. Evid. Code §§ 1108 & 1360 as unconstitutionally vague, and (c) not pursuing a claim of judicial bias based on the trial court's alleged <u>Crawford</u> error; (3) judicial bias and prejudice; and (4) unconstitutionally vague statutes  (Cal. Evid. Code §§ 1108 & 1360).  <u>See</u> Lodgment 14.  On January 26, 2015, the appellate court denied the petition.  Lodgment 15.

6

On April 3, 2015, Petitioner filed a second habeas petition in the California Court of Appeal[1] alleging the same claims.  Lodgment 16.  The appellate court denied the petition as repetitive and successive because there was no change in facts or law.  Lodgment 18.

On April 30, 2015, Petitioner filed a habeas corpus petition in the Supreme Court of California raising the same claims that he had raised in in the California Court of Appeal.  Lodgment 19.  On July 15, 2015, the Supreme Court of California summarily denied the petition.  Lodgment 20.

On August 6, 2015, Petitioner filed the instant petition asserting the following claims: (1) judicial bias and prejudice; (2) unconstitutionally vague statutes; (3) ineffective assistance of trial counsel for: (a) not retaining an expert witness, (b) not investigating Adrianna's father and stepmother to establish a motive for Adrianna to accuse Petitioner, (c) not obtaining evidence that "three individual jurors were badgered and intimidated into reaching a guilty verdict," and (d) failing to challenge the trial court's decision to admit the videotaped interview of Adrianna as part of the prosecution's case on the ground the admission violated Petitioner's right to confront adverse witnesses under Crawford; and (4) ineffective assistance of appellate counsel for (a) not challenging the admission of the videotaped interview of Adrianna as erroneous under Crawford, (b) not challenging Cal. Evid. Code §§ 1108 & 1360 as unconstitutionally vague, and (c) not pursuing a claim of judicial bias based on the trial court's alleged Crawford error.  Pet.

---

[1]    The Court notes that although the cover sheet for the petition lists the California Supreme Court, the filing date corresponds to the filing date for Petitioner's habeas petition in the California Court of Appeal.  See Lodgments 16–18.

## SCOPE OF REVIEW

Title 28 of the United States Code, section 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214.  Under 28 U.S.C § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In making this determination, a court may consider a lower court's analysis.  Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (authorizing a reviewing court to look through to the last reasoned state court decision).  Summary denials are presumed to constitute adjudications on the merits unless "there is reason to think some other explanation for the state court's decision is more likely."  Harrington v. Richter, 562 U.S. 86, 99-100 (2011).

8

15cv1757-BEN (BLM)

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413). "[A] federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Id. at 75-76 (citations and internal quotation marks omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

If the state court provided no explanation of its reasoning, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington, 562 U.S. at 102. In other words, a federal court may not grant habeas relief if any fairminded jurist could find the state court's ruling consistent with relevant Supreme Court precedent.

Finally, habeas relief also is available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); <u>Wood v. Allen</u>, 558 U.S. 290, 293 (2010). A state court's decision will not be overturned on factual grounds unless this Court finds that the state court's factual determinations were objectively unreasonable in light of the evidence presented in state court. See <u>Miller–El</u>, 537 U.S. at 340; <u>see also</u> <u>Rice v. Collins</u>, 54h6 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable). This Court will presume that the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473-74 (2007).

## **DISCUSSION**

### I.    **Judicial Bias and Prejudice**

Petitioner argues that the trial judge displayed judicial "bias and prejudice" by improperly admitting the videotaped interview of Adrianna in violation of <u>Crawford</u>, 541 U.S. 36. Pet. at 20-24; Trav. at 3-5. Petitioner acknowledges that incorrect judicial decisions rarely establish bias but asserts that in this case the trial court acted in an "'extreme' manner" by making an "independent determination of reliability of the alleged victim's testimony, a function which belonged exclusively to [t]he jury," and allowing the prosecution to play the videotaped interview of the alleged victim.[2]   Trav. at 4. Petitioner further asserts that the trial

---

[2]  The Court notes that to the extent Petitioner is arguing that the trial court made improper evidentiary findings in violation of state law, such claim cannot form the basis for federal habeas relief. <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72 (1991); <u>Marshall v. Lonberger</u>, 459 U.S.

court "compounded [the] error" by admonishing the jury regarding credibility determinations. Pet. at 20-21 (citing id., Exh. K at 539-41). Finally, Petitioner claims that the alleged error was not harmless because the improperly introduced videotaped interview permitted the jurors to believe that Petitioner was a "dangerous child molester," as evidenced by the jury's inquiry during deliberations as to whether Petitioner was a registered sex offender. See Trav. at 4-5.

Respondent claims that Petitioner has not established that the trial court was biased. Ans. at 19-20. Respondent maintains that an adverse ruling against Petitioner in admitting Adrianna's out-of-court statement and then instructing the jury about making credibility determinations does not amount to a constitutional violation. Id. at 20. Respondent further claims that Petitioner fails to demonstrate any judicial "misconduct or bias that was so prejudicial that it deprived defendant of a fair, as opposed to a perfect trial." Id.

Petitioner raised this claim in the habeas petition filed in the California Supreme Court. Lodgment 19 at 5-9. The California Supreme Court summarily denied the petition without comment or citation to authority on July 15, 2015. Lodgment 20. Because the California Supreme Court summarily denied Petitioner's petition, the Court must "look through" the silent denial to the California Court of Appeal's opinion. Ylst, 501 U.S. at 804 n.3. The California Court of Appeal found that Petitioner's claim lacked merit, reasoning as follows:

> Adverse rulings, even if erroneous, do not establish judicial bias. (*People v. Farley* (2009) 46 Cal.4th 1053, 1110.) Here, the trial court's ruling on the admissibility of the videotaped interview of the victim was not erroneous under *Crawford* because the victim testified at trial. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." (*Crawford, supra*, 541 U.S. at p. 59, fn. 9).

422, 438 n.6 (1983) (noting that the Due Process Clause does not permit federal courts "to engage in a finely-tuned review of the wisdom of state evidentiary rules").

Lodgment 15 at 2.

"The right to a fair trial is a 'basic requirement of due process' and includes the right to an unbiased judge." Haupt v. Dillard, 17 F.3d 285, 287 (9th Cir. 1994) (citing In re Murchison, 349 U.S. 133, 136 (1955)).    To prove judicial bias, a petitioner must overcome the presumption of honesty and integrity in favor of the judge. Withrow v. Larkin, 421 U.S. 35, 47 (1975) (there is a "presumption of honesty and integrity in those serving as adjudicators"); Sivak v. Hardison, 658 F.3d 898, 924 (9th Cir. 2011) (quoting Rhoades v. Henry, 598 F.3d 511, 519 (9th Cir. 2010)) (petitioner is required to overcome a "strong presumption that a judge is not biased or prejudiced."). "Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994); Poland v. Stewart, 117 F.3d 1094, 1103 (9th Cir. 1997) (same).  Moreover, on federal habeas review, a state court's finding of the absence of bias is entitled to a presumption of correctness. Sivak, 658 F.3d at 924; Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997). The court "must ask whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995).

Petitioner alleges that "the admission of th[e] videotaped interview immediately after direct testimony, violat[es] . . . the Confrontation [C]lause." Pet. at 24.  The United States Supreme Court has concluded that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." Crawford, 541 U.S. at 59 n.9 (citing California v. Green, 399 U.S. 149, 162 (1970)).  The rationale behind this holding is that "the declarant is present at trial to defend or explain [her prior out-of-court statement]." Crawford, 541 U.S. at 59 n.9.  In this case,

1  Adrianna testified at trial [Lodgment 1 at 434-49] and was cross-examined [id. at 449-57].

2  Accordingly, there are "no constraints at all on the use of [Adrianna's] prior testimonial

3  statements," including the playing of the videotaped interview, and the trial judge did not err

4  in allowing the videotape to be played.  See Crawford, 541 U.S. at 59 n.9.  Petitioner's

5  disagreement with the trial judge's ruling is insufficient to demonstrate bias.  See Liteky, 510

6  U.S. at 555; Poland, 117 F.3d at 1103.

7        Petitioner further claims that the trial court "compounded it[]s error" by "giving a

8  special, lengthy admonishment to the jury which specifically addressed the question of

9  credibility."  Pet. at 20-21 (citing id., Exh. K at 115-17).  The trial judge stated the following

10  during the jury "admonishment" challenged by Petitioner:

11        All right.  Ladies and gentlemen, just a few brief words before we adjourn
       for the day.  I think maybe what you've experienced today underscores what I
12       attempted to impress upon you during the selection process, that you and you
       alone are the judges of the facts, and that a very important corollary necessar[]y
13       to deciding the facts is to decide issue of credibility and believability.  And those
       issues and determinations rest solely upon your shoulders as members of the
14       jury.  And such credibility determinations are important in every case, not just
       this one.  Although certainly, they're important in this case as well.

15
       But I sometimes talk about the strengths of our jury system, from my
16       experience and perspective.  And it's always been my very strong belief that one
       of the core strengths of our jury system is that it reposes decisions in a case
17       such as this regarding facts and credibility, not upon the narrow shoulders of a
       single judge, but rather on the collective shoulders of 12 members drawn from a
18       cross section of our community.

19        And to just underscore how important common sense and human
       experience is to your decision-making tasks and the task to which you're put in
20       terms of deciding credibility, sometimes I try to give a very poor example of that
       by concluding, for the sake of this discussion, that no one on the jury is over 30
21       years of age.  And if anyone is under 30, well, forgive me for making you older
       than you are.

22
       But what I mean to say by that is that if, for this example, you take each
23       30 per juror and apply a multiple of 12, you obviously end up, by my poor

13

1    arithmetic, with 360 years of human experience and common sense being
     brought to bear upon the issues in this case.

2
          And I have no hesitation in saying that it's been my experience that jurors
3    uniformly are up to the task of making important decisions like you're being
     called upon to make in this case. And I'm confident that you'll make those
4    decisions appropriately after an objective analysis of the evidence and applying
     the law as I'll give it to you much more comprehensively at the conclusion of the
5    evidence.

6         So we're going to adjourn until tomorrow morning, and what are we going
     to do? Well, maybe watch a little figure skating, among other things, but
7    whatever we do, it's not going to have any connection to the subject matter of
     this case. You're going to remember the admonitions, and really, after a day like
8    this, you ought to make a conscious effort to disengage yourself from these
     proceedings. Okay? Don't—don't let it weigh on you to the extent that you can
9    avoid your mind wandering back to this courtroom. We'll pick it up tomorrow
     morning, hopefully, refreshed.

10

11   Lodgment 1 at 539-40; see also Pet., Exh. K at 115-16. Petitioner does not explain why the

12   trial judge's admonishment regarding credibility determinations evidenced the judge's bias or

13   prejudice. See Pet., Trav. Having reviewed the above admonishment, the Court finds

14   Petitioner's argument to be without merit.

15        Accordingly, Adrianna's videotaped interview was properly admitted, and even if it had

16   been erroneously admitted, the admission of the challenged evidence did not establish a

17   biased judge, create a fundamentally unfair trial, nor violate Petitioner's due process rights.

18   See Duckett, 67 F.3d at 740. Petitioner has failed to overcome the presumption of honesty

19   and integrity in favor of the trial judge. See Withrow, 421 U.S. at 47; Sivak, 658 F.3d at 924.

20   The Court concludes that the state court's denial of Petitioner's claim was not contrary to nor

21   involved an unreasonable application of clearly established federal law as determined by the

22   United States Supreme Court, nor was an unreasonable determination of the facts. See 28

23

15cv1757-BEN (BLM)

U.S.C. § 2254(d).  The Court therefore **RECOMMENDS** that Petitioner's first claim for relief be **DENIED**.

## II.    Constitutionality of Cal. Evid. Code §§ 1108 and 1360

Petitioner argues that Cal. Evid. Code §§ 1108(a) and 1360(a) are unconstitutionally vague, violate due process, and are therefore void.  See Pet. at 24-26; Trav. at 5-6.   In support, Petitioner asserts that the U.S. Supreme Court has not specifically limited the void-for-vagueness challenge to only criminal statutes.   See Pet. at 24; Trav. at 6.   Petitioner contends that the wording of the challenged statutes is broad and does not put a person of common intelligence on "notice of what is prohibited,"[3] and that the statutes "lack a set standard of application," leading to their enforcement in a discriminatory manner.   See Pet. at 24, 26; Trav. at 5.   Finally, Petitioner maintains that the challenged statutes apply to a particular type or class of crimes and permit convictions of those crimes based on evidence that is not admissible in any other type of criminal trial.  Pet. at 26.

Respondent contends that Petitioner's claim lacks merit because it is not based on a definition of a crime, but rather on the admissibility of the evidence.  Ans. at 21.  Respondent argues that the challenged statutes do not set out any crime or elements of a crime, and do not "forbid nor require the doing of an act in terms so vague that a person of common intelligence must necessarily guess at the meaning and differ as to it application."  Id. at 22

---

[3]   Petitioner asserts that Cal. Evid. Code § 1108(a) does not put him on notice that "**accusations**, which have not been previously plead and proven in a court of law, may serve as evidence against him," and that Cal. Evid. Code § 1360(a) does not put him on notice that the prosecution may admit the testifying child's statements as "substantial evidence" in their case-in-chief.  Pet. at 25 (emphasis in original), 26.

1    (citing Roberts v. U.S. Jaycees, 468 U.S. 609, 629 (1984)).  Respondent thus asserts that the

2    California Court of Appeal properly rejected the claim.  Id.

3        A law is unconstitutionally vague if it either "fail[s] to provide the kind of notice that will

4    enable ordinary people to understand what conduct it prohibits" or "authorize[s] and even

5    encourage[s] arbitrary and discriminatory enforcement." City of Chicago v. Morales, 527 U.S.

6    41, 56 (1999); see also Skilling v. United States, 561 U.S. 358, 402-03 (2010); Kolender v.

7    Lawson, 461 U.S. 352, 357 (1983).  "Although the doctrine focuses both on actual notice to

8    citizens and arbitrary enforcement, . . . the more important aspect of [the] vagueness doctrine

9    is not actual notice, but . . . the requirement that a legislature establish minimal guidelines to

10    govern law enforcement." Kolender, 461 U.S. at 357-58 (internal quotation marks and citation

11    omitted).  Federal courts assessing whether a state statute is unconstitutionally vague are

12    required to look to the plain language of the statute and consider state courts' construction of

13    the statute.  See id. at 355; Nunez by Nunez v. City of San Diego, 114 F.3d 935, 941-42 (9th

14    Cir. 1997).  Federal courts must accept a narrow construction to uphold the constitutionality of

15    a state statute if the statute's language is readily susceptible to it.  See Nunez by Nunez, 114

16    F.3d at 942.  For vagueness challenges to statutes which do not involve First Amendment

17    freedoms, a court should examine the statute "in the light of the facts of the case at hand."

18    United States v. Powell, 423 U.S. 87, 92 (1975) (internal quotation marks and citation

19    omitted).

20        Petitioner raised this claim in the petition for review filed in the California Supreme

21    Court.  Lodgment 19 at 9-11.  The California Supreme Court summarily denied the petition

22    without comment or citation to authority.  Lodgment 20.  Because the California Supreme

23    Court summarily denied Petitioner's petition, the Court must "look through" the silent denial to

the California Court of Appeal's opinion.  Ylst, 501 U.S. at 804 n.3.  The California Court of

Appeal upheld the constitutionality of Cal. Evid. Code §§ 1108 and 1360, reasoning as follows:

> [Petitioner] contends statutes authorizing admission of the interview (Evid. Code, § 1360) and evidence of [Petitioner's] prior sex crimes (*id.*, § 1108) are "void for vagueness."
>
> . . .
>
> The Evidence Code provisions are not susceptible to [Petitioner]'s void-for vagueness challenge because they prescribe no conduct.  Such a challenge lies only when a statute "'either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.'"  *Roberts v. U.S. Joycees* (1984) 468 U.S. 609, 629.

Lodgment 15 at 1-2.

The state appellate court reasonably determined that Cal. Evid. Code §§ 1108 and 1360 are not unconstitutionally vague.  See id.  Cal. Evid. Code § 1108(a) provides that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  The challenged statute uses straightforward language and references other California Evidence Code sections, which define key terms employed in section 1108(a).  Specifically, Cal. Evid. Code § 1101 sets forth the general rule that propensity evidence is not admissible to prove a person's conduct on a specific occasion.  See Cal. Evid. Code § 1108.  Further, Cal. Evid. Code § 352, which is incorporated into Cal. Evid. Code § 1108(a), permits the trial court to exclude otherwise admissible evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  Cal. Evid. Code § 352.

As such, persons of ordinary intelligence who are accused of a sexual offense would understand that Cal. Evid. Code § 1108(a) is an exception to the general rule that propensity evidence is not admissible [see Cal. Evid. Code § 1101], and that the evidence of their commission of another sexual offense may be offered by prosecution and admitted, subject to the trial court's evaluation of the evidence's relevance and prejudicial effect.  See Johnson v. Paramo, 2015 WL 1439969, at *21 (E.D. Cal. Mar. 27, 2015) (stating that Cal. Evid. Code § 1108(a) is an exception to the general rule that propensity evidence is not admissible); Kolender 461 U.S. at 357.

    Further, the language of the challenged Cal. Evid. Code § 1360 provides the following:

(a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply:

    (1)  The statement is not otherwise admissible by statute or court rule.

    (2)  The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability.

    (3)  The child either:
    (A) Testifies at the proceedings.
    (B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child.

(b) A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party the intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement.

(c) For purposes of this section, "child abuse" means an act proscribed by Section 273a, 273d, or 288.5 of the Penal Code, or any of the acts described in

18

1    Section 11165.1 of the Penal Code, and "child neglect" means any of the acts
2    described in Section 11165.2 of the Penal Code.

3    Id.  The language of the statute is clear and the relevant portion of the statute puts an

4    ordinary person on notice that a statement made by a child victim describing an act of abuse

5    may be admitted if the statement is sufficiently reliable and the child testifies at the

6    proceedings.  See Kolender, 461 U.S. at 357.

7    Due process requires that the challenged statute not only afford notice, but also provide

8    standards for its application and adjudication to preclude arbitrary and discriminatory

9    enforcement of the statute.  See id. at 358 (stating that "[w]here the legislature fails to

10    provide . . . minimal guidelines, a . . . statute may permit 'a standardless sweep [that] allows

11    policemen, prosecutors, and juries to pursue their personal predilections.'").  The Kolender

12    Court construed the challenged statute to require people accused of loitering to provide

13    "credible and reliable" identification.  Id. at 358, 361.  The Court reasoned that the lack of any

14    standard for determining how a suspect should meet the requirement vested "virtually

15    complete discretion in the hands of the police to determine whether the suspect ha[d] satisfied

16    the statute," and found that the statute at issue was unconstitutionally vague.  Id.  Unlike the

17    statute in Kolender, Cal. Evid. Code §§ 1108 and 1360 do not vest "virtually complete

18    discretion" in law enforcement officials, because the statutes supply sufficient guidance to

19    attorneys, judges and juries charged with interpreting the statute, and thereby minimize the

20    danger of arbitrary or discriminatory enforcement.  See id. at 358.

21    In light of the above, the Court concludes that Cal. Evid. Code §§ 1108 and 1360 are

22    not unconstitutionally vague, and that the state appellate court's decision upholding the

23    constitutionality of the statutes at issue was not contrary to or an unreasonable application of

clearly established federal law.  <u>See</u> 28 U.S.C. § 2254(d).  Numerous courts have reached the same conclusion.  <u>See, e.g.</u>, <u>Renella v. Adams</u>, 2007 WL 963969 at *3-4 (N.D. Cal. Mar. 30, 2007) (noting that "the Supreme Court has never held that the admission of evidence of prior crimes violates due process," and rejecting petitioner's constitutional challenge to Cal. Evid. Code § 1108); <u>Johnson v. Paramo</u>, 2015 WL 1439969, at *20-22 (E.D. Cal. Mar. 27, 2015) (rejecting petitioner's claim that his constitutional rights were violated when trial court admitted evidence of his prior uncharged sexual offense pursuant to Cal. Evid. Code § 1108, and rejecting petitioner's constitutional challenge to Cal. Evid. Code § 1108); <u>see also</u> <u>Mejia v. Garcia</u>, 534 F.3d 1036, 1046-47 (9th Cir. 2008) (rejecting petitioner's claim that the admission of prior sexual offense evidence violated his constitutional rights); <u>Brodit v. Cambra</u>, 350 F.3d 985, 990-91 (9th Cir. 2003) (admission of evidence under Cal. Evid. Code § 1360 did not violate defendant's due process rights); <u>Cunningham v. Grounds</u>, 2013 WL 2153283, at *4 (N.D. Cal. May 16, 2013) (same).  The Court therefore **RECOMMENDS** that Petitioner's second claim for relief be **DENIED**.

### III.    <u>Ineffective Assistance of Trial Counsel</u>

Petitioner claims that his trial counsel was constitutionally ineffective for (a) not retaining an expert witness, (b) not investigating Adrianna's father and stepmother to establish a motive for Adrianna to accuse Petitioner, (c) not obtaining evidence that "three individual jurors were badgered and intimidated into reaching a guilty verdict," and (d) failing to challenge the trial court's decision to admit the videotaped interview of Adrianna as part of the prosecution's case on the ground the admission violated Petitioner's right to confront adverse witnesses under <u>Crawford</u>.  Pet. at 26-42.  Respondent asserts that Petitioner's ineffective assistance of trial counsel claim is without merit.  Ans. at 22-29.

Under clearly established federal law, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984).  To prove ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense.  Id. at 687.  The proper measure of attorney performance is "simply reasonableness under prevailing professional norms."  Id. at 688.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;" that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  Id. at 689-90.  To determine whether errors of counsel prejudiced the defense, a court "must consider the totality of the evidence before the judge or jury" and consider whether "the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."  Id. at 696.  The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one.  Id. at 697.

Petitioner raised his ineffective assistance of trial counsel claim in the petition for review filed in the California Supreme Court.  Lodgment 19 at 11-30.  Because the California Supreme Court summarily denied Petitioner's petition [Lodgment 20], the Court must "look through" the silent denial to the California Court of Appeal's opinion.  Ylst, 501 U.S. at 804 n.3.  The California Court of Appeal considered Petitioner's ineffective assistance of trial counsel claim and denied it as follows:

1

[Petitioner] claims his trial counsel provided constitutionally ineffective assistance by: (1) not retaining an expert witness to rebut the testimony of the prosecution's expert on child abuse; (2) not investigating the victim's father and stepmother to establish a motive for the victim to accuse Sopher; (3) not obtaining evidence that "three individual jurors were badgered and intimidated into reaching a guilty verdict"; and (4) not seeking writ review of the admission of a videotaped interview of the victim as part of the prosecution's case on the ground the admission violated Sopher's right to confront adverse witnesses under *Crawford v. Washington* (2004) 541 U.S. 36 *(Crawford)*.

. . .

To the extent Sopher faults trial . . . counsel for not pursuing . . . claims of *Crawford* error, his ineffective assistance claims fail because counsel have no duty to make meritless arguments . . . merely to create a record impregnable to assault for claimed inadequacy of counsel." *(People v. Constancio* (1974) 42 Cal.App.3d 533, 546.) Finally, Sopher's claims [that] trial counsel was ineffective for not retaining an expert witness, not investigating the victim's father and stepmother to uncover a motive for the victim's accusations against Sopher, and not obtaining evidence of juror intimidation fail to state a prima facie case. The petitioner "'must establish the nature and relevance of the evidence that counsel failed to present or discover.'" *(In re Clark* (1993) 5 Cal.4th 750, 766.) Sopher's conclusory allegations of counsel's deficiencies, without any factual explanation of what evidence adequate representation would have discovered or how that evidence would have led to a better outcome at trial, are insufficient. *(People v. Duvall* (1995) 9 Cal.4th 464, 474.).

Lodgment 15 at 1-2. Because Petitioner's ineffective assistance of trial counsel claim consists of several sub-claims, the Court will address each sub-claim separately below.

**(a)   Failure to Retain Expert Witness**

Petitioner alleges that his trial counsel was ineffective because he did not retain an expert witness. See Pet. at 27-28, 32-35; Trav. at 8. Specifically, Petitioner faults his trial counsel for not retaining an expert witness to assist him in preparing a defense and to rebut

22

the testimony of the prosecution's expert on child abuse, Christina Schultz.[4]  Pet. at 27-28, 34.  Petitioner further maintains that he was prejudiced by his trial counsel's alleged deficiencies because he was "denied a potentially meritorious defense."  Id. at 40.

Respondent argues that Petitioner has not offered a supporting declaration from his trial counsel and does not specify what experts should have been secured, whether there was any expert who would have testified for him, whether such testimony would have been admissible, or how the outcome of the trial would have been different.  Ans. at 24, 26-27.  Respondent thus claims that Petitioner's assertions are speculative and insufficient to rebut the strong presumption that his trial consel's decision not to call an expert witness fell within the wide range of reasonably competent professional assistance.  Id. at 24, 26.

Christina Schultz, a forensic interviewer for the child abuse program at Palomar-Pomerado Health, interviewed Adrianna on December 12, 2007, and testified during Petitioner's trial.  Lodgment 1 at 488-538.  Ms. Schultz testified that she has a master's degree in social work, has attended numerous relevant trainings and seminars, and has worked in the child abuse program for almost six years, conducting approximately 450 interviews.  Id. at 489-91.  Ms. Schultz explained that she functions as a neutral fact-finder during the interviews and she described how she prepared for and conducted the interview of Adrianna.  Id. at 489-94.  After the video-taped interview was played for the jury [id. at 494-96], Ms. Schultz testified that during the interview, Adrianna used an anatomical female drawing to show that Petitioner touched her on the vaginal and buttocks areas.  Id. at 499.  Ms. Schultz further

---

[4]  Petitioner also asserts that his trial counsel failed to conduct an adequate investigation into Ms. Schultz's qualifications [Pet. at 33-34; Trav. at 8], and to object to the prosecution's lack of proper foundation for Ms. Schultz's testimony [Pet. at 32-33; Trav. at 8].

stated that the victims of abuse commonly make partial disclosures and disclose molestation acts in stages, and that some children may be inconsistent in their reports.  Id. at 500, 506. Ms. Schultz testified that some children may continue to be around a perpetrator after the incident has occurred.  Id. at 501.  Ms. Schultz also testified that perpetrators may engage in "grooming," which involves building a trusting relationship first and then engaging in subtle forms of abuse in order to work up to more egregious sexual acts.[5]  Id. at 503-05.

Trial counsel conducted an extensive and lengthy cross-examination of Ms. Schultz, challenging her qualifications, experience, credibility, and impartiality.  Id. at 507-32; 534-35. Trial counsel elicited an admission from Ms. Schultz that this was Ms. Schulz's "first job as a forensic interviewer" and asked a number of questions designed to challenge her assertion that she conducted a neutral interview.  Id. at 508-12.  Trial counsel also asked questions suggesting that Adrianna had not told the truth and that another individual, such as Adrianna's mother, may have caused or contributed to the statements made by Adrianna against Petitioner.  Id. at 510-32.  Finally, trial counsel asked questions that undermined Ms. Schultz's opinion that it was normal for children to disclose information about their abuse in stages.  Id.

To support his claim that trial counsel provided ineffective assistance and that Ms. Schultz was not qualified to testify as an expert, Petitioner provides a declaration from William Allen who opines that trial counsel "did not perform his due diligence with regard to

_____

[5]  Specifically, Ms. Schultz testified that "grooming" is a "dynamic between a perpetrator and a victim where the perpetrator may engage in a–often a trusting relationship with a child or something in secrecy.  And it could be initially they do subtle things, subtle forms of touching." Id. at 503.  She also stated that "grooming" is "a process of building [a] relationship and possibly beginning with more subtle forms of abuse, subtle forms of touching, kissing, and then possibly leading to more egregious acts."  Id. at 504-05.

investigating this case" and that Ms. Schultz "did not have the necessary credentials to testify as an expert witness."  See Pet., Exh. L at 119-20.  Mr. Allen states that he has "thirty (30) years [of] experience in the criminal writs and appeals field" assisting "approximately nine hundred inmates," and that he has "had the pleasure of receiving compliments from attorneys of [his] work."  Id. at 120.  Mr. Allen does not provide any details regarding his legal education, training, or experience.  Id. at 119-20; see also id. at 81 (Petitioner's declaration contains numerous statements attributed to Petitioner's "paralegal" that appear to refer to Mr. Allen).  Mr. Allen also does not provide any facts for his opinions, other than to state that they were based on his review of the record and of Ms. Schultz's testimony.  Id. at 120. Respondent maintains that because Mr. Allen is neither an attorney nor a recognized expert on ineffective assistance of counsel, his declaration is insufficient to support Petitioner's claim. Ans. at 25.  The Court agrees with Respondent's contention that Mr. Allen's declaration is not sufficient to establish that Ms. Schultz was not qualified to testify as an expert or to substantiate Petitioner's ineffective assistance of counsel claims.

Although Petitioner claims that counsel should have retained an expert to rebut Ms. Schultz's testimony, Petitioner does not describe the specific facts that the expert would have rebutted or disputed, nor does he identify the expert who would have provided such testimony.  As summarized above, trial counsel engaged in lengthy and directed cross-examination designed to do precisely what Petitioner is requesting—undermine the validity of Ms. Schultz's interview and opinions and suggest that Adrianna's statements regarding the sexual abuse were not truthful.  The decision to use cross-examination, rather than a competing expert to challenge an expert opinion, is a valid trial tactic.  See Ward v. Beard, 2013 WL 5913816, at *20 (C.D. Cal. Oct. 30, 2013) (citing United States v. Gamba, 541 F.3d

895, 900 (9th Cir. 2008); <u>Dows v. Wood</u>, 211 F.3d 480, 487 (9th Cir. 2003); <u>Gustave v. United States</u>, 627 F.2d 901, 905 (9th Cir. 1980)) ("A defense attorney's decisions regarding the manner and scope of cross-examination and what use to make of potential impeachment evidence are matters of trial tactics left to the attorney's sound professional judgment."). A federal habeas court's review of counsel's tactical decisions "must be highly deferential" and accorded "'a strong presumption' of validity, regardless of whether [the court] agree[s] with it." <u>United States v. Quintero–Barraza</u>, 78 F.3d 1344, 1349 (9th Cir. 1995) (quoting <u>Strickland</u>, 466 U.S. at 689).

Petitioner has not identified any expert witness who would have testified on his behalf nor specifically described the conflicting opinion that such an expert would have provided. On the other hand, trial counsel vigorously cross-examined Ms. Schultz regarding her qualifications, interview techniques, and opinions. Trial counsel also obtained responses from Ms. Schultz that could be used to undermine Adrianna's statements. Furthermore, Petitioner's trial counsel emphasized the "weaknesses" of Ms. Schultz's testimony and the credibility of Adrianna's statements made to Ms. Schultz during his closing argument. Lodgment 1 at 711-14. In light of the above, Petitioner cannot overcome the strong presumption that his trial counsel's tactical decision not to hire an expert witness was reasonable. <u>See</u> <u>Harrington</u>, 562 U.S. at 107 (deferring to counsel's decision not to hire an expert because the counsel was entitled to "formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.").

Petitioner also has not demonstrated that he suffered prejudice as a result of his trial counsel's alleged failure to secure an expert witness. A claim of prejudice stemming from counsel's failure to call an expert witness must be supported by evidence sufficient to create a

reasonable probability that the jury would have had a reasonable doubt concerning Petitioner's guilt. See Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990). In this case, other than generally speculating that a hypothetical expert could have assisted in preparing Petitioner's defense and/or rebutted Ms. Schultz's testimony, Petitioner does not suggest what credible evidence an expert could have offered to create a reasonable doubt as to Petitioner's guilt on count 1. Furthermore, as correctly pointed out by the California Court of Appeal, Petitioner did not deny physical contact with Adrianna (the kiss), which was the underlying act of abuse in count 1, and was not prejudiced by Ms. Schultz's testimony regarding abuse victims' delay in disclosure of the full extent of the abuse, as evidenced by the jury's inability to reach a verdict on counts 2 and 3. See Lodgment 7 at 6; see also Lodgment 3 at 279, 282. The Court thus finds that Petitioner's conclusory and speculative allegations are insufficient to demonstrate prejudice as a result of his trial counsel's decision not to call an expert witness. See Grisby v. Blodgett, 130 F.3d 365, 379 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice."). Accordingly, the state appellate court's decision was not an unreasonable application of clearly-established Supreme Court law, and the Court **RECOMMENDS** that Petitioner's sub-claim be **DENIED.**

### (b) Failure to Investigate Adrianna's Father and Stepmother to Establish a Motive for Adrianna to Accuse Petitioner

Petitioner asserts that his trial counsel was ineffective for not investigating Adrianna's father and stepmother, Nathaniel and Michelle Slasson. See Pet. at 35-36; see also Trav. at 10. Petitioner states that he did not have "sexual contact with Adrianna" and "was absolute[ly] innocent of the accusations made against [him]," and theorizes that the "ulterior motive" for these claims was an attempt by Adrianna's father and stepmother "to gain full

legal custody" of her.  Pet. at 36, 81.  Petitioner claims that he was prejudiced as a result of his trial counsel's alleged failure because he was not able to present a complete defense.  Id. Respondent contends that Petitioner's claim is without merit because Petitioner did not provide any supporting declarations from his trial counsel, Nathaniel Slasson or Michelle Slasson, and did not establish that the Slassons' alleged testimony would have been admissible at trial. Ans. at 27-28.

Clearly established federal law provides that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.  "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id.; Cox v. Del Papa, 542 F.3d 669, 679 (9th Cir. 2008) (same), cert. denied, 555 U.S. 1185 (2009).  Moreover, a claim of failure to interview a witness cannot establish ineffective assistance of counsel "when the person's account is otherwise fairly known to defense counsel." Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986).  Reasonable tactical decisions, including decisions regarding counsel's presentation of a case, are "virtually unchallengeable." Strickland, 466 U.S. at 687-90.  An ineffective assistance claim based on the failure to call a witness generally requires evidence that the uncalled witness would in fact have testified [United States v. Harden, 846 F.2d at 1231-32], what the "witness would have testified to" [United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987], and that the testimony would have created a reasonable doubt as to defendant's guilt [Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990)].

Here, Petitioner does not provide any evidence, other than his self-serving and conclusory declaration, to support his allegations.  In his declaration, Petitioner merely states

that because he did not commit the charged crimes, there must be an "ulterior motive" behind the accusations and that he suggested to counsel that he "investigate Adrianna's father and stepmother because they had been trying to gain full legal custody."  Pet. at 81.  Petitioner provides no evidence or facts to support his ulterior motive theory.  Petitioner does not provide a declaration from the Slassons or anyone who knew the Slassons to support his theory.  Petitioner also does not provide any evidence, other than his bald statement that "to [Petitioner's] knowledge, [counsel] did not fulfill my request to investigate Adrianna's father and stepmother" to support his claim that counsel did not investigate the Slassons  Id. at 81. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."  James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).  Petitioner has not established that his trial counsel's performance fell below an objective standard of reasonableness.  Because Petitioner has not established the substance or relevance of any alleged impeachment or motive testimony, Petitioner also has not established prejudice.

The Court thus finds that the state court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law.  See Matylinsky v. Budge, 577 F.3d 1083, 1097 (9th Cir. 2009) (concluding that petitioner did not satisfy the prejudice prong under Strickland when he failed to show "what additional testimony his suggested forty-one witnesses would give in order to change the outcome of the trial"); Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (concluding that petitioner's claim for ineffective assistance of trial counsel for not calling an alleged alibi witness was without merit, where the petitioner did not provide evidence that the witness would have provided helpful testimony to the defense, by, for example, providing an affidavit from an alleged witness).  Accordingly, the Court **RECOMMENDS** that Petitioner's sub-claim be **DENIED.**

1       **(c)    Failure to Investigate Jury Misconduct**

2       Petitioner asserts that his trial counsel was ineffective for failing to investigate jury

3 misconduct. <u>See</u> Pet. at 36-38; Trav. at 8, 11-12. Petitioner alleges that his trial counsel

4 "possesses three post jury notes indicating three individual jurors were badgered and

5 intimidated into reaching a guilty verdict on Count 1,"[6] and argues that his trial counsel should

6 have requested a hearing to investigate potential jury misconduct and moved for a new trial.

7 Pet. at 36. Petitioner further claims that he was not able to obtain the jury notes from his trial

8 counsel and could not submit any juror declarations. <u>See</u> Pet. at 29, 36; Trav. at 11-12.

9 Respondent argues that Petitioner's supporting declaration is self-serving, that Petitioner has

10 not submitted any declarations from the jurors, and that Petitioner thus fails to overcome the

11 strong presumption that his trial counsel was not ineffective. Ans. at 28.

12       The Sixth Amendment guarantees criminal defendants the right to a fair trial by a panel

13 of unbiased, indifferent jurors. <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961). The right to a jury

14 trial applies to state criminal trials through the Due Process Clause of the Fourteenth

15 Amendment. <u>See</u> <u>Duncan v. Louisiana</u>, 391 U.S. 145, 149 (1968). Due process requires that

16 the defendant be tried by "a jury capable and willing to decide the case solely on the evidence

17 before it." <u>Smith v. Phillips</u>, 455 U.S. 209, 217 (1982). "When the jury breaches this duty by

18 considering extraneous facts not introduced in evidence, 'a defendant has effectively lost the

19 rights of confrontation, cross-examination, and the assistance of counsel with regard to jury

20

21           ———————————————

22 [6] Petitioner alleges that the notes were "collected [from three jury members] after trial" and they demonstrated that "each of them had been bullied, badgered, and or coerced into their guilty verdict," that one jury member "said the Jury Foreman was 'playing DA's advocate' and

23 'pushing for a verdict,'" and that the other juror stated that his "experience was so bad that [the juror] would never serve on a jury again." Trav. at 8.

1   consideration of the extraneous evidence.'"  Hughes v. Borg, 898 F.2d 695, 700 (9th Cir. 1990)

2   (quoting Gibson v. Clanon, 633 F.2d 851, 854 (9th Cir. 1980)).

3       The "near-universal and firmly established common-law rule in the United States flatly

4   prohibit[s]" the admission of juror testimony to impeach a verdict except where an

5   "extraneous influence" affected the verdict.  Tanner v. United States, 483 U.S. 107, 117

6   (1987); see also Mattox v. U.S., 146 U.S. 140, 149 (1892) ("on a motion for a new trial on the

7   ground of bias on the part of one of the jurors, the evidence of jurors, as to the motives and

8   influences which affected their deliberations, is inadmissible either to impeach or to support

9   the verdict.  But a juryman may testify to any facts bearing upon the question of the existence

10  of any extraneous influence . . . .").  "Federal Rule of Evidence 606(b) is grounded in the

11  common-law rule against admission of jury testimony to impeach a verdict and the exception

12  for juror testimony relating to extraneous influences."  Tanner, 483 U.S. at 121 (citation

13  omitted).   Federal Rule of Evidence 606(b), which is the federal counterpart to California

14  Evidence Code § 1150, states:

15      **(b) During an Inquiry Into the Validity of a Verdict or Indictment.**
           **(1) Prohibited Testimony or Other Evidence.**  During an inquiry into the
16  validity of a verdict or indictment, a juror may not testify about any statement
       made or incident that occurred during the jury's deliberations; the effect of
17  anything on that juror's or another juror's vote; or any juror's mental processes
       concerning the verdict or indictment.   The court may not receive a juror's
18  affidavit or evidence of a juror's statement on these matters.

19      **(2) Exceptions.**  A juror may testify about whether:
           (A) extraneous prejudicial information was improperly brought to the
20  attention;
           (B) an outside influence was improperly brought to bear on any juror; or
21      (C) a mistake was made in entering the verdict on the verdict form.

22  Id.  Fed. R. of Evid. 606(b) renders affidavits or declarations suggesting jury misconduct

23  inadmissible if they do not demonstrate on their face that extraneous information affected jury

1  deliberations.  Id.; see also Hard v. Burlington Northern Railroad, 870 F.2d 1454, 1461 (9th

2  Cir. 1989) ("The type of after-acquired information that potentially taints a jury verdict should

3  be carefully distinguished from the general knowledge, opinions, feelings, and bias that every

4  juror carries into the jury room").  Accordingly, federal courts have properly denied motions

5  for an evidentiary hearing and/or a new trial where such requests are based on juror

6  declarations found to be inadmissible under Rule 606(b).    See, e.g, United States v.

7  Rutherford, 371 F.3d 634, 640 (9th Cir. 2004) (upholding district court's denial of new trial

8  because Rule 606(b) barred consideration of declarations stating that jurors ignored court's

9  instructions and discussed defendant's failure to testify); see also Morgan v. Woessner, 997

10  F.2d 1244, 1261 (9th Cir. 1993) (affirming district court's denial of evidentiary hearing and

11  new trial under Rule 606(b) where jurors revealed during interviews that they wanted to send

12  a message to city hall with their verdict and that they speculated about the plaintiff's

13  attorney's fees during their deliberations).

14      In this case, Petitioner's sole evidence is his own declaration asserting that his trial

15  counsel told him that three jurors had written notes indicating they had been badgered and

16  bullied into finding him guilty.  Pet., Exh. E at 80-82.  Even if the Court accepts as true

17  Petitioner's hearsay statements regarding the alleged juror notes, Petitioner has failed to

18  establish ineffective assistance of counsel.  According to Petitioner, the notes do not contain

19  any evidence of "extraneous prejudicial information" or improper "outside influence;" they

20  merely contain information regarding the jury's deliberations, statements made by one juror to

21  another during deliberations, and/or the mental process of a juror.  Id.  As such, the alleged

22  notes could not be used to impeach the verdict and would not have warranted an evidentiary

23  hearing or motion for new trial.  See Tanner, 483 U.S. at 117 (admission of jury testimony is

"flatly prohibited" to impeach a jury verdict except where an "extraneous influence" affected

the verdict); Mattox, 146 U.S. at 149 ("the evidence of jurors, as to the motives and influences

which affected their deliberations, is inadmissible either to impeach or to support the

verdict."). Counsel's failure to make such a motion, therefore, does not constitute ineffective

assistance. See Strickland, 466 U.S. at 687. Because the state court's decision was not

contrary to, or an unreasonable application of, clearly established federal law, the Court

**RECOMMENDS** that this sub-claim be **DENIED.**

### (d)    Failure to Challenge the Trial Court's Decision to Admit Interview Tape

Petitioner argues that his trial counsel was ineffective for failing to seek a writ of

mandate challenging the trial court's ruling admitting the videotaped interview of Adrianna on

the ground that the admission violated his right to confront adverse witnesses under Crawford,

541 U.S. 36. See Pet. at 38-39; Trav. at 12. Petitioner asserts that the video was not offered

to support Adrianna's testimony after impeachment on cross-examination, but as part of the

prosecution's case-in-chief, which allowed Adrianna "to testify twice before the jury, once

without the possibility of cross examination." Pet. at 38; Trav. at 12. Respondent maintains

that Petitioner's claim fails because the trial court did not err by admitting the videotaped

interview and because Petitioner has not established that a petition for writ of mandate would

have been granted. Ans. at 28. As stated above, the state appellate court found the claim to

be without merit. Lodgment 15 at 2.

This Court has discussed and rejected Petitioner's claim that the trial court improperly

admitted the videotaped interview of Adrianna in violation of Petitioner's right to confront

adverse witnesses under Crawford, 541 U.S. 36. See supra, Section I. Furthermore, even if

Petitioner could establish that his trial counsel's conduct was constitutionally deficient,

1  Petitioner has not established "that there is a reasonable probability that, but for counsel's

2  unprofessional errors, the result of the proceedings would have been different."   See

3  Strickland, 466 U.S. at 694.  Petitioner fails to demonstrate that a petition for writ of mandate

4  from the admission of the videotaped interview would have been granted and that the alleged

5  error by the trial court affected the result of the proceeding.   See id.  As such, Petitioner

6  cannot establish either prong of Strickland.  See id.; see also McCullock v. Woodford, 2009 WL

7  2059432, at *31 (C.D. Cal. July 14, 2009) (rejecting petitioner's claim that his trial counsel was

8  ineffective by not filing a petitioner for writ of mandate regarding the court's ruling on

9  petitioner's motion to continue, where the trial court's denial of the continuance did not violate

10 the petitioner's constitutional rights and the petitioner failed to demonstrate that a petition for

11 writ of mandate would have been granted); Lopes v. Campbell, 2009 WL 635187, at *11 (E.D.

12 Cal. Mar. 11, 2009) (rejecting petitioner's claim that his trial counsel was ineffective by not

13 filing a petition for writ of mandate regarding the court's ruling on petitioner's Cal. Penal Code

14 § 995 motion, where the court found that the petitioner's claim was "conclusory and

15 unsupported," and there was "no reason to believe that [the] petition for writ of mandate

16 would have been granted.").  Accordingly, the California Court of Appeal's decision was not

17 contrary to, or an unreasonable application of, clearly established federal law, and the Court

18 **RECOMMENDS** that habeas relief on this sub-claim be **DENIED**.

19    **IV.    Ineffective Assistance of Appellate Counsel**

20    Petitioner alleges that his appellate counsel was ineffective for (a) not challenging the

21 trial court's admission of the videotaped interview of Adrianna as erroneous under Crawford,

22 (b) not challenging Cal. Evid. Code §§ 1108 and 1360 as unconstitutionally vague, and (c) not

23 pursuing the claim of judicial bias based on the trial court's alleged Crawford error.  See Pet. at

42-43; Trav. at 12-13.    Petitioner further argues that he was prejudiced by his appellate counsel's performance because the appellate court might have reversed his conviction had the issues been brought on direct appeal and because he was denied the ability to seek federal habeas corpus review of the issues.    Pet. at 44-45.    Respondent alleges that Petitioner's appellate counsel was not deficient.  Ans. at 29.

The California Supreme Court summarily denied Petitioner's petition asserting ineffective assistance of appellate counsel claim.  See Lodgment 20; see also Lodgment 19 at 27-30.   The California Court of Appeal found that Petitioner's claim "fail[ed] on the merits" reasoning as follows:

> Sopher faults his appellate counsel for: (1) not challenging the admission of the videotaped interview of the victim as erroneous under *Crawford;* (2) not challenging Evidence Code sections 1108 and 1360 as unconstitutionally vague; and (3) not pursuing a claim of judicial bias based on the trial court's alleged *Crawford* error.
>
> . . .
>
> To the extent Sopher faults appellate counsel for not pursuing vagueness challenges to Evidence Code sections 1108 and 1360 or claims of *Crawford* error, his ineffective assistance claims fail because counsel have no duty to make meritless arguments . . . merely to create a record impregnable to assault for claimed inadequacy of counsel." *(People v. Constancio* (1974) 42 Cal.App.3d 533, 546.).

Lodgment 15 at 1-2.

Where a petitioner challenges the effectiveness of his appellate counsel, the Strickland standard applies in the same manner as claims of ineffective assistance of trial counsel.  Smith v. Robbins, 528 U.S. 259, 285 (2000); Bailey v. Newland, 263 F.3d 1022, 1028 (9th Cir. 2001), cert. denied, 535 U.S. 995 (2002).  "Defense counsel does not have a constitutional duty to raise all nonfrivolous issues on appeal."  McGee v. Dexter, 2010 WL 2044526, at *11 (C.D. Cal.

1   April 19, 2012) (citing <u>Pollard v. White</u>, 119 F.3d 1430, 1435 (9th Cir. 1997)).  "Appellate

2   counsel's failure to raise an issue on direct appeal cannot constitute ineffective assistance

3   when the 'appeal would not have provided grounds for reversal.'"  <u>Id.</u> (quoting <u>Wildman v.</u>

4   <u>Johnson</u>, 261 F.3d 832, 840 (9th Cir. 2001)).

5          Accordingly, to prevail on his claim, Petitioner must demonstrate that his appellate

6   counsel was deficient and that the deficient performance prejudiced his defense.  <u>See</u>

7   <u>Strickland</u>, 466 U.S. at 687.  As discussed throughout this Report and Recommendation, the

8   above legal issues are without merit.  Cal. Evid. Code §§ 1108 and 1360 are not

9   unconstitutionally vague and numerous courts have reached the same conclusion.  <u>See</u>

10  Section II.  Similarly, the <u>Crawford</u> decision does not prohibit or restrict the use of Adrianna's

11  interview tape since Adrianna testified at trial, so the admission of the tape was not an error

12  and did not indicate judicial bias or prejudice.  <u>See</u> Sections I and III.  Because the identified

13  claims are without merit, Petitioner's appellate counsel did not provide ineffective assistance

14  by failing to raise them.  <u>Wildman v. Johnson</u>, 261 F.3d 832, 840 (9th Cir. 2001) (citing <u>Jones</u>

15  <u>v. Smith</u>, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000)) ("[a]ppellate counsel's failure to raise

16  issues on direct appeal does not constitute ineffective assistance when the appeal would not

17  have provided grounds for reversal.").

18         Even if Petitioner could satisfy the first prong of the ineffective assistance of counsel

19  test, he has not satisfied the second prong.  Contrary to Petitioner's assertions, the California

20  Court of Appeal specifically considered the claims at issue and found them "meritless."  <u>See</u>

21  Lodgment 15; <u>see also</u> Pet. at 44-45.  Because the state court correctly found that all three

22  claims were without merit, Petitioner cannot establish prejudice.  <u>See</u> <u>Strickland</u>, 466 U.S. at

23  692 (counsel's failure to raise a non-meritorious claim does not prejudice defendant).

Accordingly, Petitioner fails to satisfy his burden under both prongs of the <u>Strickland</u> test. <u>See id.</u> The Court thus finds that the state court's denial of Petitioner's ineffective assistance of appellate counsel claim was not contrary to, or an unreasonable application of, clearly established federal law, and **RECOMMENDS** that the claim be **DENIED.**

### V.    Request for Evidentiary Hearing and Appointment of Counsel

Petitioner requests that the Court conduct an evidentiary hearing and appoint an attorney to represent him at the hearing. <u>See</u> Pet. at 45; Trav. at 13. A federal court's discretion to hold an evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously made unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

"Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." <u>Williams v. Taylor</u>, 529 U.S. 420, 437 (2000). Here, Petitioner generally argues that "having presented sufficient preliminary facts to warrant it, an evidentiary hearing should be held to establish the underlying facts of the ineffective assistance of counsel claim," and that he is "entitled to an evidentiary hearing during which he would be given an opportunity to flesh out the facts

1    supporting his claims." Pet. at 45; Trav. at 13. However, Petitioner does not establish that his

2    request relies on a new rule of constitutional law, or a factual predicate that could not have

3    been previously discovered through the exercise of due diligence. See id. Similarly, Petitioner

4    has not alleged facts that would be sufficient to establish by clear and convincing evidence

5    that but for constitutional error, no reasonable factfinder would have found him guilty of the

6    underlying offense. See id. Finally, as set forth above, Petitioner's claims are meritless and

7    the Court finds no basis or need for an evidentiary hearing. Accordingly, the Court **DENIES**

8    Petitioner's request for an evidentiary hearing.

9       A financially eligible habeas petitioner seeking relief pursuant to 28 U.S.C. § 2254 may

10   obtain representation whenever the court "determines that the interests of justice so require.'"

11   18 U.S.C. § 3006A(a)(2)(B); Terrovona v. Kincheloe, 912 F.2d 1176, 1181 (9th Cir. 1990).

12   The interests of justice require appointment of counsel when the court conducts an evidentiary

13   hearing on the petition. Knaubert v. Goldsmith, 791 F.2d 722, 728 (9th Cir. 1986) (citations

14   omitted). However, the appointment of counsel is discretionary when no evidentiary hearing

15   is necessary. Terrovona, 912 F.2d at 1177; Knaubert, 791 F.2d at 729 (citing Sumner v. Mata,

16   449 U.S. 539, 545-57 (1981) and 28 U.S.C. § 2254(d)) ("unless an evidentiary hearing is held,

17   an attorney's skill in developing and presenting new evidence is largely superfluous; the

18   district court is entitled to rely on the state court record alone."). Because the Court finds that

19   an evidentiary hearing is not appropriate, the Court also **DENIES** Petitioner's request for

20   appointment of counsel to represent him during the hearing. See id.

21   ///

22   ///

23   ///

15cv1757-BEN (BLM)

**CONCLUSION AND RECOMMENDATION**

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that no later than **August 12, 2016**, any party to this action may file written objections with this Court and serve a copy on all parties.   The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 26, 2016**.   The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.   See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated:  7/22/2016

Hon. Barbara L. Major
United States Magistrate Judge

15cv1757-BEN (BLM)